USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAY 3 1 2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Old Carco LLC

(f/k/a Chrysler LLC), *et al.*,

                Debtors,

18-cv-11290 (AJN)

Frankie Overton,

                Appellant,

    -v-

FCA US LLC.

                Appellee.

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Appellant Frankie Overton, as executor of the estate of Sue Ann Graham, brings this bankruptcy appeal under 28 U.S.C. § 158 seeking review of the Bankruptcy Court's decision barring Appellant's wrongful death claims against FCA US LLC f/k/a/ Chrysler Group LLC ("New Chrysler"). A-686–A-714. For the reasons that follow, the Bankruptcy Court's decision is AFFIRMED.

I. **Background**

    A. **The Sale Order**

On April 30, 2009, Old Carco LLC ("Old Chrysler") commenced bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court in this District. Old Chrysler and New Chrysler entered into a Master Transaction

Agreement (the "MTA") by which New Chrysler agreed to purchase substantially all of the assets of Old Chrysler. *See* A-114–A-291. The Bankruptcy Court approved the transaction set forth in the MTA, as amended, and the sale closed on June 10, 2009 (the "Sale Order"). *See* A-062–A-113. Numerous Alabama state entities, including the Alabama Secretary of State, received notice of the sale, and none chose to object to entry of the Sale Order. *See* Affidavit of Service of Sale Hearing, Bankr. Docket No. 930, at p. 126.

The Sale Order authorized the transfer of the purchased assets "free and clear of all Claims except for Assumed Liabilities" (as defined in the MTA) and free of successor liability. Sale Order ¶ 9, A-088. It stated:

> Except for the Assumed Liabilities expressly set forth in the Purchase Agreement or described therein or Claims against any Purchased Company, none of the Purchaser, its successors or assigns or any of their respective affiliates shall have any liability for any Claim that (a) arose prior to the Closing Date, (b) relates to the production of vehicles prior to the Closing Date or (c) otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date. . . . Without limiting the foregoing, the Purchaser shall not have any successor, derivative or vicarious liabilities of any kind or character for any Claims . . . now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated. Sale Order ¶ 35, A-102–A103.

Section 2.09 of the MTA enumerated, "for the avoidance of doubt," certain "Excluded Liabilities" that New Chrysler did not assume. *See* A-476. They included "all Product Liability Claims arising from the sale of Products or Inventory prior to the Closing." MTA § 2.09(i), A-133. The MTA broadly defined an excluded Product Liability Claim as:

> any Action arising out of, or otherwise relating to in any way in respect of claims for personal injury, wrongful death or property damage resulting from exposure to, or any other warranty claims, refunds, rebates, property damage, product recalls, defective material claims, merchandise returns and/or any similar claims, or any other claim or cause of action, whether such claim is known or unknown or asserted or unasserted with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by [Old Chrysler].

MTA Definitions Addendum, at p. 90, as amended by Amendment No. 1 to MTA, ¶ 36, A-216. On Nov. 19, 2009, the parties in the bankruptcy proceeding amended section 2.08(h) to the MTA to expand the scope of Assumed Liabilities relating to Product Liability Claims. *See* A-292–A-311. As amended, New Chrysler assumed liability for post-closing accidents involving vehicles manufactured and sold by Old Chrysler before the closing, but the assumption expressly excluded liability for punitive damages. Under the amendment ("Amendment No. 4"), Assumed Liabilities included:

> (i) all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and (ii) all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles . . . solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages.

MTA, Amendment No. 4, ¶ 1, A-299.

**B.    The Complaint**

On October 17, 2017, Frankie Overton ("Overton"), as administrator of the estate of Sue Ann Graham (the "Decedent"), and Scott Graham ("Graham," and together with Overton, the "Plaintiffs"), as legal guardian of the Decedent's minor son, J.G., filed a complaint in Alabama State Court against, among others, New Chrysler. *See* A-360–A-378. The subject of the case is a car accident that occurred in Alabama on June 10, 2016. *Id.* The Decedent and J.G. were riding as passengers in a 2002 Jeep Liberty when another vehicle struck the Jeep causing it to overturn. *Id.* The Decedent sustained fatal injuries; J.G. sustained non-fatal injuries as well as mental and emotional injuries. *Id.*

The Plaintiffs brought claims in Alabama State Court pursuant to the Alabama

3

Extended Manufacturer's Liability Doctrine and under theories of negligence and wantonness. *Id.* The claims directed at New Chrysler alleged that the proximate cause of the Plaintiffs' injuries was the defective design, manufacture and sale of the Vehicle, or alternatively, the failure to warn or recall the Vehicle despite New Chrysler's knowledge of the defective condition. *Id.* Overton sought damages under the Alabama Wrongful Death Act, as a result of the death of the Decedent. *Id.*

### C. Proceedings

After the complaint was filed in Alabama State Court, New Chrysler removed the action to the United States District Court for the Northern District of Alabama, and moved to sever claims, transfer venue the Southern District of New York for referral to the Bankruptcy Court, and for partial dismissal. *See Overton v. Chrysler Grp. LLC*, No. 2:17-cv-01983 (RDP), 2018 WL 847772, at *1 (N.D. Ala. Feb. 13, 2018). Plaintiffs moved to remand the action back to Alabama State Court. *Id.* The District Court ruled that it had subject matter jurisdiction under 28 U.S.C. § 1334 over the Overton Claims because the action required the interpretation and enforcement of the Bankruptcy Court's order approving Amendment No. 4. *Id.* at *5. The District Court explained: "Plaintiff Overton's claims against FCA and Chrysler for punitive damages under Alabama's Wrongful Death Act directly implicate and challenge the terms of the Bankruptcy Court's November 19, 2009 Order approving Amendment No. 4. Because Plaintiffs' claims implicate bankruptcy court orders that require interpretation, Plaintiffs' claims relate to the Old Carco bankruptcy proceedings and subject matter jurisdiction exists." *Id.*

However, the District Court ultimately abstained from exercising jurisdiction pursuant to 28 U.S.C. § 1334(c)(1) and remanded the action back to the Alabama State Court. The District Court explained that Alabama State Court was capable of interpreting the MTA, and, "[i]n the

unlikely event that the state court does not honor" the Bankruptcy Court orders, New Chrysler could appeal or petition the Bankruptcy Court to enforce the orders against the Plaintiffs. *Id.* at *7.

After the District Court's ruling, on March 12, 2018, New Chrysler filed a motion to reopen the Bankruptcy Case and a motion to enforce the Sale Order. A-009–A-027; A-030–A-057. The Bankruptcy Court held argument on the motions on June 7, 2018. A-636–A-685. The Bankruptcy Court granted the motion to reopen at the June 7, 2018 hearing, and entered a reopening order on June 25, 2018. A-632–A-633. On November 1, 2018, the Bankruptcy Court issued its decision, granting in part New Chrysler's motion to enforce and holding that Overton's wrongful death claims are barred by the Sale Order and MTA, and enjoining their prosecution. A-686–A-714. Appellants timely filed a notice of appeal, and the parties provided briefing on the relevant issues. Dkt. Nos. 1, 13, 18, 19. The State of Alabama submitted an *amicus curiae* brief in support of Overton. Dkt. No. 16.

## II. Jurisdiction and Standard of Review

District courts have appellate jurisdiction over appeals from bankruptcy courts' final judgments, orders, and decrees under 28 U.S.C. § 158(a).

On appeal, a bankruptcy court's legal conclusions are reviewed *de novo* and its findings of fact are reviewed for clear error. *AppliedTheory Corp. v. Halifax Fund., L.P.*, 493 F.3d 82, 85 (2d Cir. 2007).

## III. Discussion

Overton raises several issues on appeal, including that the Bankruptcy Court improperly exercised jurisdiction over Overton's claims, and that it incorrectly concluded that Overton's

claims were barred by the terms of the Sale Order and MTA. The Court addresses each of these arguments and concludes that the Bankruptcy Court did not err in its decision.

### A. The Bankruptcy Court Did Not Abuse Its Discretion By Reopening The Chrysler Bankruptcy Case and Enforcing The Sale Order.

On appeal, Overton argues that the Bankruptcy Court overstepped its role when it reopened the bankruptcy case and concluded that Overton's claims were barred by the Sale Order and the MTA based on available damages under Alabama's Wrongful Death statute. The Court disagrees.

A bankruptcy court's decision to reopen a bankruptcy case "is reviewed under an abuse of discretion standard." *Elmar Associates, LLC v. Gutman (In re B&N Props., LLC)*, No. 17-CV-3929 (PKC), 2017 WL 6001774, at *2 (E.D.N.Y. Dec. 4, 2017) (citing *In re Chalasani*, 92 F.3d 1300, 1307 (2d Cir. 1996)). Overton does not present any argument that the Bankruptcy Court abused its discretion when it reopened the bankruptcy case. Rather, Overton only contends that once the Bankruptcy Court reopened the case, it overstepped its role in analyzing Overton's Alabama Wrongful Death statute.

A bankruptcy court's "role [] is a 'gatekeeper' role. It should be the court to decide what claims and allegations should get through the 'gate,' under the Sale Order and [the Bankruptcy Court's] prior decisions. If a complaint violates an enforceable provision of the Sale Order, it may not proceed as currently drafted. If it does not violate the Sale Order, the complaint 'passes through the gate' for the appropriate nonbankruptcy court to decide whether it is actionable." *In re Motors Liquidation Co.*, 568 B.R. 217, 222 (Bankr. S.D.N.Y. 2017), *aff'd*, 590 B.R. 39 (S.D.N.Y. 2018); *see Goodall v. Chrysler, Inc. (In re Old Carco LLC)*, No. 09-50002 (SMB), 2018 WL 3854047 at *4 (Bankr. S.D.N.Y. Aug. 10, 2018); *Bennett v. FCA US LLC (In re Old Carco LLC)*, 587 B.R. 809, 815 (Bankr. S.D.N.Y. 2018). Additionally, a "Bankruptcy Court

[has] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). Whether a bankruptcy court should permissively abstain from deciding an issue pursuant to 28 U.S.C. 1334(c)(1)[1] is reviewed under an abuse of discretion standard. *Wallace v. Guretzky*, No. CV-09-0071 (SJF), 2009 WL 3171767, at *2 (E.D.N.Y. Sept. 29, 2009); *see In re Bay Point Associates*, No. 07-CV-1492 (JS), 2008 WL 822122, at * 3 (E.D.N.Y. Mar. 19, 2008); *Argentinian Recovery Co. LLC v. Board of Directors of Multicanal S.A.*, 331 B.R. 537, 543 (S.D.N.Y. 2005).

Here, the Bankruptcy Court correctly exercised its role as gatekeeper and analyzed whether Overton's complaint violated a provision of the Sale Order. The Bankruptcy Court reviewed the terms of the Sale Order and the MTA, applied settled Alabama law, discussed in greater detail below, and concluded that Overton's claims were barred.

Overton argues that the Bankruptcy Court should have abstained from reviewing Overton's claims all together because the Alabama state court has jurisdiction and is equally capable of interpreting and enforcing the Sale Order and the MTA as applied to Overton's claims. *See* Dkt. No. 13 ("Overton Br."), at 23. While it is true that the Alabama state court has concurrent jurisdiction to consider issues presented by the Sale Order and the MTA, there is no reason to conclude that the Bankruptcy Court *had* to abstain and defer to the Alabama state court. As discussed above, the Alabama District Court had already concluded that "Plaintiff Overton's claims against FCA and Chrysler for punitive damages under Alabama's Wrongful Death Act *directly implicate and challenge* the terms of the Bankruptcy Court's November 19, 2009 Order approving Amendment No. 4. Because Plaintiffs' claims implicate bankruptcy court

---

[1] Section 1334(c)(1) states: "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

7

orders that require interpretation, Plaintiffs' claims relate to the Old Carco bankruptcy proceedings . . . ." *Overton*, 2018 WL 847772, at *5 (emphasis added). Therefore, the Bankruptcy Court did not abuse its discretion when it reopened the case and reviewed Alabama law in order to enforce its own prior order. *Travelers*, 557 U.S. at 151.

### B. The Bankruptcy Court Correctly Applied Settled Alabama Law to the Unambiguous Terms of the MTA.

Overton also argues that the Bankruptcy Court incorrectly interpreted Alabama's Wrongful Death Act to only allow recovery for punitive damages, and also incorrectly interpreted the terms of the MTA. The Court now addresses each of these arguments.

#### 1. Alabama Law Only Allows For Recovery of Punitive Damages Under The Wrongful Death Act.

Overton argues that the Bankruptcy Court incorrectly interpreted Alabama's Wrongful Death Act to only allow recovery for punitive damages, when in fact, the statute allows for a different form of recovery. The Court disagrees. The Bankruptcy Court applied settled Alabama caselaw that has consistently construed the Wrongful Death Act to limit recovery to punitive damages only.

The Wrongful Death statute allows a personal representative of a decedent to "commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama . . . for the wrongful act, omission, or negligence of any person, persons, or corporation, his or her or their servants or agents . . . ." Ala. Code § 6-5-410(a). While the statute does not define these damages as punitive, Alabama courts have consistently interpreted "damages as the jury may assess" in the statute to only allow for awards of punitive damages. *See Lance, Inc. v. Ramanauskas*, 731 So. 2d 1204, 1221 (Ala. 1999) ("[T]his Court has, under the crushing weight of 150 years of stare decisis, consistently held that our wrongful-

death statute allows for the recovery of punitive damages only."); *Trott v. Brinks, Inc.*, 972 So. 2d 81, 84 (Ala. 2007).

Overton argues that Alabama's wrongful death damages contain characteristics of both compensatory and punitive damages—and therefore a court's interpretation of a contractual punitive damages exclusion cannot end with the fact that Alabama calls its wrongful death damages "punitive." *See* Overton Br. at 14–15. However, the case law, which the Bankruptcy Court analyzed in great detail, is well settled on this point—Alabama authority is clear that the damages available are not punitive in name only. Rather, damages under the Wrongful Death statute are to punish tortfeasors, not to compensate victims. *Trott*, 972 So. 2d at 84 ("The instant action is a wrongful-death action under Ala. Code 1975, § 6–5–410. In such a case, the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions—not to compensate the plaintiff."); *King v. Nat'l Spa & Pool Inst., Inc.*, 607 So. 2d 1241, 1247 (Ala. 1992) ("A wrongful death claim does not provide compensation for injuries that cause death. Punitive damages are not compensation, and our system should not be contorted to treat them as such."); *Painter v. Tennessee Val. Auth.*, 476 F.2d 943, 944 (5th Cir. 1973)[2] ("[W]e reject the argument that the damages awarded under the statute are, regardless of the label applied by the Alabama courts, inherently compensatory to any extent.").

Perhaps, in light of this overwhelming caselaw, Overton also argues that Alabama's wrongful death damages are not "punitive" in the traditional sense because one can recover under the Wrongful Death Act based on negligence, whereas most claims for punitive damages require a higher level of *mens rea*. *See* Overton Br. at 31, 34. However, the fact that recovery

---

[2] A federal court in Alabama would continue to apply *Painter*, as Eleventh Circuit courts are bound to Fifth Circuit precedent before October 1, 1981, when federal Alabama courts moved from the Fifth Circuit to the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

9

can occur based on mere negligence does not change the punitive nature of the damages. As the Bankruptcy Court noted, the degree of culpability is one of the elements a jury can consider in assessing the amount of the award. *See Black Belt Wood Co. v. Sessions*, 514 So. 2d 1249, 1262 (Ala. 1986) ("The purpose of Alabama's wrongful death statute, of course, has been twofold: (1) punishment based on the quality of the wrong, and (2) punishment based upon the wrong or degree of culpability"); *Blount Bros. Constr. Co. v. Rose*, 149 So. 2d 821, 833 (Ala. 1962) (damages under the Wrongful Death Act are based on "the culpability of defendant, the enormity of the wrongful act, and the necessity of deterring similar wrongs"). It is clear that damages under the Wrongful Death Act are punitive damages, meant to punish and deter rather than to compensate.

Accordingly, the Bankruptcy Court correctly applied settled Alabama law and concluded that damages under Alabama's Wrongful Death Act are punitive damages.

### 2. The Sale Order and The MTA Unambiguously Foreclose Claims for Punitive Damages.

The Bankruptcy Court then analyzed the terms of the Sale Order and the MTA and determined they foreclose claims for punitive damages. The Court agrees.

The Sale Order and the MTA unambiguously foreclose claims against New Chrysler "for exemplary or punitive damages." MTA, Amendment No. 4, ¶ 1, A-299. The MTA is governed by and construed in accordance with New York law. *See* A-189, A-300. When contractual language is "clear, unequivocal and unambiguous, the contract is to be interpreted by its own language." *R/S Assocs. v. N.Y. Job Dev. Auth.*, 771 N.E.2d 240, 242 (N.Y. 2002). If a contract "on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Selective Ins. Co. of Am. v. Cty. of Rensselaer*, 47 N.E.3d 458, 461 (N.Y. 2016). "Language whose meaning is otherwise plain does

10

not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir. 1989).

Despite Overton's arguments to the contrary, Amendment 4 is not ambiguous. It states that Assumed Liabilities under the MTA do "not include any claim for exemplary or punitive damages." MTA, Amendment No. 4, ¶ 1, A-299. Exemplary and punitive damages are legal terms that are commonly used and well-understood. They are damages intended to punish the wrongdoer and deter future wrongdoing, rather than damages designed to compensate a victim. Black's Law Dictionary defines "punitive damages" as "[d]amages awarded in addition to actual damages when the defendant acted with recklessness, malice, or deceit; specifically, *damages assessed by way of penalizing the wrongdoer or making an example to others*," and "exemplary damages" as a synonym. Damages, Black's Law Dictionary (10th Ed. 2014) (emphasis added). Similarly, Merriam-Webster's defines punitive damages as "damages awarded in excess of compensatory damages or nominal damages *to punish a defendant for a gross wrong*," and "exemplary damages" as a synonym. Webster's Third New International Dictionary (2019) (emphasis added). Nor does the lack of a definition of the terms in the MTA render it ambiguous. *See United States v. Am. Soc'y of Composers, Authors & Publishers,* 309 F. Supp. 2d 566, 573 (S.D.N.Y. 2004) ("the mere fact that a contractual term is undefined does not render it ambiguous"). Accordingly, the MTA is unambiguous that claims for "for exemplary or punitive damages," meaning claims intended for damages that are designed to punish and deter wrongdoing, are barred.

### 3. The Sale Order And The MTA Bar Claims Under The Alabama Wrongful Death Act.

The Bankruptcy Court then applied settled Alabama law to the terms of the Sale Order and the MTA. As discussed above, damages under the Wrongful Death Act are punitive, and are

not compensatory. This type of recovery, punitive or exemplary damages, is barred by the Sale Order and the MTA. *See* MTA, Amendment No. 4, ¶ 1, A-299. The Bankruptcy Court therefore properly concluded that under the terms of the Sale Order and the MTA, Overton's wrongful death claims are barred.

### C. The Public Policy Clause In The MTA Does Not Save Overton's Claims.

Overton makes a final argument—that a public policy exception in the MTA saves his claims. Amendment 4 provides that:

> [i]f any term or other provision of this Amendment is invalid, illegal or incapable of being enforced by any rule of Law, or public policy, then to the maximum extent permitted by Law, all other conditions and provisions of this Amendment shall nevertheless remain in full force and effect.

A-300–A-301. The term "Law" is defined as "any federal, national, international, supranational, state, provincial, local or similar (including of any jurisdiction within or outside the United States) statute, law, ordinance, regulation, rule, code, order, requirement or rule of law (including common law)." A-213. Overton argues that it is against Alabama public policy to bar all wrongful death recovery, and therefore, the "exemplary or punitive damages" provision of the MTA cannot be applied to Overton's wrongful death claims. The Court disagrees, and concludes that Overton overstates the scope of Alabama's settled public policy.

To support his argument, Overton cites to several cases noting that Alabama courts have held that insurance contracts cannot exclude punitive damages for wrongful death, thereby eliminating coverage for the underlying claim. *See Hill v. Campbell*, 804 So. 2d 1107, 1109 (Ala. Civ. App. 2001) ("A standard liability policy that excluded coverage for punitive damages in a wrongful-death case would contravene Alabama law."); *Wingard v. Lansforsakringar AB*, No. 2:11-CV-45 (WKW), 2013 WL 5493177, at *14 (M.D. Ala. Sept. 30, 2013). Overton also points to an Alabama Attorney General advisory opinion to the Insurance-Liability State

12

Departments advising, "[a]ny administrative ruling which allowed insurance companies to exclude coverage for punitive damages under standard liability policies would be in direct contravention of wrongful death caselaw on the subject, and would therefore be void as against public policy of this state as well." A-405–A-407.

However, public policy must be "well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987). Overton points to no authority, such as Alabama legislation, or relevant caselaw, that expands the rationale he relies on for his public policy exception beyond the insurance context.

Overton argues that if the Court does not recognize the public policy exception, it will lead to "absurd results" where wrongful death claims in other states are permitted under the terms of the MTA, but barred only for an Alabama resident. *See* Overton Br. at 35. However, as the Bankruptcy Court pointed out, this argument is not new. There have been analogous situations involving federal statutes that preclude the recovery of punitive damages—and a cause of action under Alabama's Wrongful Death Act has been barred. In *Painter*, the personal representative of a decedent's estate brought an action under the Wrongful Death Act against the Tennessee Valley Authority. 476 F.2d at 944. The action was dismissed because the Wrongful Death Act was limited to the recovery of punitive damages, and punitive damages could not be recovered against the United States or its agencies. *Id.* The Fifth Circuit explained that the result that stems from the unique nature of the damages recoverable under Alabama's Wrongful Death statute:

> It is altogether anamolous [sic] that similarly situated survivors could maintain this action against the TVA under the law of practically any other state while those who have the misfortune of being relegated to the use of Alabama law are permitted no right of action at all. This lack of uniformity of tort responsibility of a federal institution based on the

13

fortuity of geography is irrational . . . . The aberration in such cases must find its remedy through an appropriate Congressional waiver of the TVA's immunity to punitive damages or by the creation of some uniform federal right of action, *or by Alabama's amendment or reinterpretation of its law*.

*Id.* at 944-45 (emphasis added). *See also Springer v. Bryant*, 897 F.2d 1085, 1089 (11th Cir. 1990) (". . . Alabama courts have treated the damages awardable under the Alabama Wrongful Death Statute as being solely punitive in nature. We are bound by this judicial construction of the purpose and function underlying Alabama's wrongful death statute and . . . conclude that an Alabama wrongful death action may not lie against the TVA."). While *Painter* does not control the analysis here, it is instructive. The result in this case flows from the interpretation by Alabama courts of the nature of the damages recoverable under the Wrongful Death Act. Despite judicial criticism in Alabama, *see, e.g., King*, 607 So. 2d at 1251 (Maddox, J., dissenting), and academic criticism, *see, e.g.,* Bert S. Nettles and Forrest S. Latta, *Alabama's Wrongful Death Statute: A Problematic Existence*, 40 Ala.L.Rev. 475, 476 (1989), the Alabama Supreme Court has not overruled its precedent, nor has the legislature acted, to change the damages available under its Wrongful Death statute. The Bankruptcy Court's decision did not single out Alabama residents—rather, it correctly applied settled Alabama law to the unambiguous terms of the MTA.

It is useful to consider what would occur if Overton's claims asserted against New Chrysler for punitive damages were allowed to proceed. Under this scenario, a litigant asserting claims under the Alabama Wrongful Death Statute could pursue punitive damages, which, under Alabama law, is uncapped, *see* Ala. Code § 6-5-410, while claimants in other states would be barred from seeking these awards. This would be an equally "absurd result," and is certainly not what the parties to the MTA contemplated.

The Court must also consider that there is a "well-established public policy of upholding the finality of sale orders issued by bankruptcy courts to encourage potential acquirers to make bids on assets in bankruptcy." *In re Lehman Bros. Holdings, Inc.*, No. 08-13555 (JMP), 2011 WL 722582, at *6 (Bankr. S.D.N.Y. Feb. 22, 2011) (citing *In re Lawrence*, 293 F.3d 615, 621 (2d Cir.2002)). "A § 363 sale can often yield the highest price for the assets because the buyer can select the liabilities it will assume and purchase a business with cash flow (or the near prospect of it)." *Ind. State Police Pension Trust v. Chrysler LLC (In re Chrysler LLC)*, 576 F.3d 108, 116 (2d Cir.), *vacated as moot sub. nom. Indiana State Police Pension Tr. v. Chrysler LLC*, 558 U.S. 1087 (2009). As the Bankruptcy Court explained, Old Chrysler, New Chrysler and other stakeholders that participated in the negotiation struck a bargain under which New Chrysler agreed, in relevant part, to assume liability for compensatory damages for post-closing accidents involving vehicles manufactured and sold by Old Chrysler, but not to assume liability for punitive damages. In this case, "[t]he possibility of transferring assets free and clear of existing tort liability was a critical inducement to the Sale." *Id.* at 126. And, despite being on notice of the Sale Order, the State of Alabama never objected to its entry. *See* Affidavit of Service of Sale Hearing, Bankr. Docket No. 930, at p. 126. Allowing Overton's claims to proceed would upend those negotiations and the finality of the Sale Order.

Simply put, Overton's claims are for punitive damages. The claims are barred by the unambiguous terms of the MTA.

## IV. Conclusion

For the above stated reasons, the order of the Bankruptcy Court is hereby AFFIRMED. The Clerk of Court is respectfully requested to close the above-captioned action.

SO ORDERED.

Dated: ~~June~~ May 31, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge